| | |
|---|---|
| IN THE MATTER OF A SEARCH OF ) <br> 175 KEN GOUGE LANE, ERWIN, TN ) <br> THE RESIDENCE OF KENNY LYNN ) <br> GOUGE, ALL APPERTANENCES, ) <br> OUTBUILDINGS, AND VEHICLES ) <br> CONTAINED THEREON (Four (4) ) <br> Images of the area which the residence ) <br> is located are attached hereto in ) <br> Attachment A and fully incorporated ) <br> herein by reference.) ) | 2:21-MJ-144 <br><br> JUDGE WYRICK |

## AFFIDAVIT FOR A SEARCH WARRANT

Your Affiant, Jonathan Trent "Frank" Rogers, a Task Force Officer (TFO) with the United States Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), being duly sworn under oath, states as follows:

### I. INTRODUCTION

I was hired by the Unicoi County Sheriff's Department in January of 2005 as a dispatcher, where I received training in emergency medical dispatch, CPR, first aid, and received certification to operate a terminal accessing the National Criminal Information Center ("NCIC"). In 2006, I was assigned to the Patrol Division as a full-time, commissioned deputy sheriff. Subsequent to that assignment, I attended the East Tennessee Regional Law Enforcement Academy (ETRLE) at Walters State Community College in 2007 where I received 457 hours of training in basic patrol procedures. As a part of my patrol duties as a deputy sheriff, I provided routine patrol to all areas of Unicoi County, engaged in crime prevention activities, conducted criminal investigations, enforced traffic laws, and served criminal and civil process. In 2008, I was promoted to the rank of Sergeant, where I supervised patrol deputies, as well as criminal investigators. In March of 2012, I was promoted to

the position of Chief Deputy of the Unicoi County Sheriff's Department and assumed command of the entire enforcement staff (Patrol, the Criminal Investigation Division, Special Operations, Drug Unit, and School Resource functions). I served in that capacity until November 30, 2017. On December 1, 2017, I was appointed as a Criminal Investigator with the First Judicial District Attorney's Office, with investigative authority throughout the multi-county Judicial District, and currently remain in that position. In June of 2019, I was deputized federally to serve as an ATF TFO.

I have consistently received a minimum of forty hours of law-enforcement-related training annually since June 2007. I have received specialized training in officer survival, criminal investigations, firearms, DUI investigation, Clandestine Drug lab investigation and dismantling, drug trends, interview and interrogation, and the detection, collection and preservation of forensic evidence for the purpose of DNA and latent print analysis. Additionally, I have received training on crime scene investigation, burglary investigation, theft investigation and homicide investigation as well as violent crimes against persons. This training included the investigation of child abuse, emergency vehicle operation, firearms qualification, and dealing with emotionally disturbed persons.

I have personally conducted hundreds of investigations for violations of state and federal law leading to the successful arrest and prosecution of individuals for criminal violations ranging from petty theft to homicide. I have conducted undercover operations utilizing confidential informants to investigate and prosecute individuals involved in the sale of illegal drugs, illegal firearms, stolen property, soliciting murder for hire, criminal simulation, and the patronizing of prostitution. I have worked in an undercover capacity and have purchased drugs from individuals in the Eastern District of Tennessee. These undercover cases resulted in successful prosecutions in both state and federal courts.

I am an avid, outdoor sportsman, with decades of experience as a hunter of large and small game. I have a personal interest in firearms and ammunition for sporting and professional purposes. During my decade and a half of law enforcement experience, I have qualified with numerous firearms on a regular basis. Each year since 2007, I have completed at least 8 hours of training related to firearm handling, safety, and proficiency. In 2010, I completed a course of study as an armorer for Glock® firearms. As an ATF TFO, I have added to my personal experience with, and knowledge of, firearms and ammunition. I am familiar with the categories of persons who are prohibited from possessing the firearms. I have conducted traces of firearms through ATF's National Tracing Center and collected firearm ammunition for submission to the National Integrated Ballistic Information Network (NIBIN) and have experience in the recognition and identification of firearms and ammunition. I have conducted numerous, federal, criminal investigations related to the unlawful possession and use of firearms by prohibited persons.

## II. PURPOSE OF THE AFFIDAVIT

This affidavit is submitted in support of an application for a search warrant authorizing the search the of a residence, as well as any appurtenances, outbuildings, and vehicles, located at 175 Ken Gouge Lane, Erwin, TN 37650, which your Affiant knows to be the residence of Kenny Lynn Gouge, and which is further described or depicted in Attachments A, hereinafter, and referred to individually and/or collectively as the "Search Location" for any and all items described or identified in Attachment B.

## III. PROBABLE CAUSE

1. On Friday July 9, 2021, Sheriff Mike Hensley of the Unicoi County Sheriff's Department contacted your Affiant. Sheriff Hensley informed your Affiant that officers of the Tennessee

Wildlife Resources Agency (TWRA) made a request of Sheriff Hensley's department to assist them in executing a misdemeanor arrest warrant issued for Kenny Lynn Gouge for the offense of Resisting stop, frisk, halt, arrest, or search ("Resisting Arrest"), a violation of T.C.A. § 39-16-602. According to the TWRA, on June 21, 2021, officers were investigating a possible violation of T.C.A. § 70-4-116, Hunting, killing and possession of deer, bear, wild elk and wild turkey - transporting - tagging - penalties, which may have occurred on or about June 13, 2021, on the premises of the Search Location. The TWRA officers knocked at the door of the residence in an attempt at speaking to Kenny Lynn Gouge. Mr. Gouge was seen fleeing out a side door of the residence towards a wooded area. The officers were no able to locate Kenny Gouge in the wooded area, so they left the property and obtained a warrant for Resisting Arrest on June 22, 2021.

2. TWRA approached Sheriff Hensley and asked for assistance from the Unicoi County Sheriff's Department in the execution of the arrest warrant. Sheriff Hensley had prior knowledge of Kenny Lynn Gouge, including his status as a violent felon. Sheriff Hensley informed TWRA that a reliable citizen had recently informed the Sheriff that Kenny Gouge was armed with a rifle and had made threats to law enforcement. Sheriff Hensley told your Affiant that he had asked the TWRA to apply for a search warrant for the search of the body of the wanted individual at Kenny Gouge's residence; however, he learned that the TWRA officers' supervisor would not authorize the search warrant application. Sheriff Hensley expressed to your Affiant his concern for officer safety regarding the execution of the arrest warrant on Kenny Gouge.

3. Kenny Gouge has previously been arrested in Unicoi County, TN, on several occasions and was convicted for felony offenses, including violent felony offenses and felon firearm possessions. The following is an example of some of his convictions:
    a. April 16, 2021, Unicoi County Criminal Court, guilty by plea to Aggravated Assault with serious injury - sentenced to 4 years in the Tennessee Department of Corrections (TDOC);
    b. April 16, 2021, Unicoi County Criminal Court, guilty by plea to Escape - sentenced to 1 year in TDOC;
    c. December 2, 2016, Unicoi County Criminal Court, guilty by plea to Unlawful Possession of a Weapon - sentenced to 1 year and 6 months in TDOC;
    d. December 2, 2016, Unicoi County Criminal Court, guilty by plea to Manufacturing Marijuana, Schedule VI - sentenced to 1 year and 6 months TDOC; and,
    e. January 12, 2015, Unicoi County Criminal Court, guilty by plea to Felony Evading Arrest - sentenced to 1 year TDOC.
4. Kenny Gouge was released to supervision by the Tennessee Department of Probation and Parole for the 2021 convictions. Your Affiant has spoken to the supervising probation officer of Kenny Gouge and provided him with officer safety information when interacting with Gouge. The probation officer informed your Affiant that he was currently seeking a probation violation warrant for Kenny Gouge.
5. Your Affiant is also familiar with Kenny Gouge. As a Unicoi County Sheriff's Department deputy, your Affiant had encounters with Kenny Gouge and is familiar with the property where he resides (the Search Location) and his prohibited status under the Gun Control Act of 1968, as amended.

6. Your Affiant has checked online property records of Unicoi County, TN, and confirmed that as of the tax year 2021, the Search Location is owned by Kenny Lynn Gouge. Unicoi County property tax records formally identify the Search Location as Map 61, Parcel 6.04. It is identified as a residential class of property consisting of approximately 13.70 acers, with a single-family home in the Thelma Gouge subdivision. The residence is located in close proximity to the Tennessee and North Carolina border.

7. Your Affiant has also gathered physical copies of records from the Unicoi County, TN, property assessor's office that are related to the ownership of the Search Location. These records that Kenny Gouge received sole ownership interest in the entirety of the property of the Search Location through inheritance after the death of his father, Kenneth E. Gouge. Kenneth E. Gouge received his ownership of the property from his mother, Thelma Gouge, in May of 1991. Your Affiant has learned that while Kenny Gouge is the sole owner of the property, he does, on occasion, have his minor child as a visitor to the property.

8. Your Affiant has collected certified copies of the judgments of convictions and confirmed that Kenny Gouge is prohibited under 18 U.S.C. § 922(g)(1) from receiving, shipping, transporting, or possessing in interstate or foreign commerce any firearm or ammunition.

9. As a part of the investigation, on July 12, 2021, your Affiant identified two potential sources of information – James and Kelly Gouge. The Gouges have property adjoining the property of Kenny Gouge and James Gouge is a relative of Kenny Gouge.

10. During an interview, James Gouge admitted that he had seen Kenny Gouge with a firearm as late as July 11, 2021. He described the firearm as an AR-style rifle, with a green pistol grip handle and a light attached to it. He stated that nearly every day he sees Kenny Gouge with a rifle and that Kenny Gouge walks around the adjoining property (the Search Location)

6 of 10

Case 2:21-mj-00144-CRW   Document 2   Filed 07/14/21   Page 6 of 13   PageID #: 10

carrying the rifle. He admitted that he has also seen Kenny Gouge with a .380 "Ruger" pistol, which he carries in his front pants pocket. James Gouge told your Affiant that on July 11, 2021, he was shooting snakes at a pond on his property and Kenny Gouge came out of the residence on the Search Location while carrying the AR-style rifle.

11. Your Affiant is aware that the AR-style rifle has a pistol grip as a feature and those who own an AR-style rifle often attach flashlights or other accessories such as scopes, laser sights, and other optics to the rifle. Your Affiant is aware that Sturm, Ruger & Company, often referred to as "Ruger," is a licensed federal firearm manufacturer located in Southport, Connecticut, that manufactures multiple models of handguns in .380 caliber, including the LCP, LCP II, and LC380 models of handguns. Your Affiant is aware that the LCP, LCP II, and LC380 models of firearms are typically designed for concealed carry on the person.

12. Both James and Kelly Gouge informed your Affiant that they have recently been inside Kenny Gouge's residence at 175 Ken Gouge Lane, Erwin, TN – the Search Location. They admitted that on their visits inside the residence of the Search Location they observed the AR-style rifle and drugs in the open, laying on tables and a kitchen bar. They went on to state that they saw what they believed was crystal methamphetamine and other drug paraphernalia laying in the open areas inside the residence of the Search Location.

13. James Gouge informed your Affiant that, on the July 4th weekend, Kenny Gouge was involved in a domestic quarrel with a female. James Gouge identified the female as the girlfriend of Kenny Gouge. The female came from the Search Location to James and Kelly Gouge's residence. She reported to them that Kenny Gouge had physically assaulted her and asked that they, "please keep Kenny away from [her]." She told them that she was pregnant with the child of Kenny Gouge. She stated that he had slapped her in the face and picked her

7 of 10

Case 2:21-mj-00144-CRW   Document 2   Filed 07/14/21   Page 7 of 13   PageID #: 11

up by her hair. James Gouge exited his residence and went out on his porch. He said he saw Kenny Gouge walking towards him from the Search Location. He saw that Kenny Gouge was armed with the AR-style rifle. Kenny Gouge asked James Gouge, "Where is she," and James Gouge attempted to deescalate the situation. After a short time, the female was able to run out of the house, get into a car that had arrived to pick her up, and leave.

14. Kelly Gouge stated that she has heard Kenny Gouge talking or fantasizing about having a shootout with law enforcement. She stated that Kenny Gouge said that if his probation officer or police showed up while he was armed with the rifle, "it would be a bad day for y'all and him, too." James Kelly informed your Affiant that Kenny Gouge told him that he will kill anyone who comes around his house to arrest him and feed their body to coyotes. James Gouge also relayed that Kenny Gouge said he believes a neighbor in the community reported him for crashing a vehicle and for shooting the bear. Kenny Gouge then discussed threats to the suspected neighbor and how he had two (2) thirty-round magazine and one (1) twenty-round magazine. Your Affiant is aware that the Ruger LCP, LCP II, and LCP380 accept magazines of between 6 and 9 rounds; however, an AR-style rifle is capable of accepting a high-capacity magazine such as a 20-round or 30-round magazine.

15. Kelly Gouge stated that on July 11, 2021, Kenny Gouge came to her residence on the adjoining property while armed with the AR-style rifle. She said that Kenny Gouge grabbed her dog by its snout and drew his fist back as if he were going to strike the animal, but he did not hit it.

16. After interviewing James and Kelly Gouge, your Affiant asked them if they could obtain photographs of Kenny Gouge and/or the firearm. Your Affiant has seen several photographs taken within the last few days of the execution of this Affidavit. These photos depict the

8 of 10

Case 2:21-mj-00144-CRW   Document 2   Filed 07/14/21   Page 8 of 13   PageID #: 12

person known to your Affiant as Kenny Lynn Gouge, and the AR-style firearm described to your Affiant by James and Kelly Gouge as being the firearm possessed by Kenny Gouge. Your Affiant recognized the firearm in the photographs as what appears to be an AR-style rifle with a green pistol grip, a mounted flashlight, a sling, and a collapsible stock. In some photographs, the AR-style firearm is carried by Kenny Gouge in a "ready" position and others it is slung over his shoulder on to his back. These photos show Kenny Gouge walking in the open with the AR-style rifle. The Gouges stated that he walked from his residence on the Search Location to their residence and he returned back to his residence on the Search Location.

17. Your Affiant was unable to identify the manufacturer of the AR-style rifle from the photographs, but he has learned that another neighbor saw Kenny Gouge shoot the AR-style rifle, so the firearm is capable of expelling a projectile through the action of an explosive, and therefore meets the definition of a firearm in 18 U.S.C. § 921(a)(3).

18. Your Affiant has also interviewed a third witness. On July 13, 2021, another neighbor of Kenny Gouge informed your Affiant that he observed Kenny Lynn Gouge in possession of the AR-style firearm previously described by James and Kelly Gouge. That neighbor took a photograph of Kenny Gouge on July 13, 2021, which, to your Affiant, appears to depict Kenny Gouge with the AR-style rifle. The neighbor stated that Kenny Gouge had the rifle slung across his body.

19. Another person in the community informed your Affiant that on July 13, 2021, they saw Kenny Gouge walking with the AR-style rifle slung on his back. He also possessed a long gun carrier commonly used to transport a rifle or shotgun. Shortly after this conversation, James Gouge contacted your Affiant and informed him that Kenny Gouge had come to his

residence with a .30-30 caliber rifle in a long gun case. Kenny Gouge explained to James Gouge that he had received the rifle from his father. Kenny Gouge asked James Gouge to keep the rifle for him. Kenny Gouge left the rifle at James Gouge's residence. Your Affiant received photographs of the .30-30 caliber rifle. The firearm is marked as:

**The Marline Firearms Co. North Haven, CT. U.S.**

**MOD 30AS MICRO-GROOVE BARREL CAL 30/30 WIN**

The firearm in the photograph sent to your Affiant is a lever-action rifle, with a wooden stock, and a sling. It has serial number 12014123 stamped on the receiver.

20. Your Affiant has spoken to Special Agent Bryan Williams of ATF. Special Agent Williams is trained by ATF regarding the manufacturing origin of firearms (interstate or foreign nexus). Special Agent Williams has testified in federal court as to his qualifications and to the nexus of firearms. Special Agent Williams has informed your Affiant that the Ruger LCP, LCP II, and LCP380 are not manufactured in Tennessee and therefore traveled in interstate commerce to arrive in Tennessee. Special Agent Williams confirmed that The Marlin Firearms Co. in North Haven, CT, did not manufacture firearms in Tennessee and, therefore, the rifle traveled in interstate commerce to arrive in Tennessee.

21. Your Affiant believes that Kenny Lynn Gouge has previously been convicted of offenses punishable by a term of imprisonment exceeding one year. When convicted on April 16, 2021, for the offense of Aggravated Assault (Serious Injury) and Escape (Felony), Kenny Gouge was ordered to serve 30 days for the Aggravated Assault conviction as a part of his sentence. The remainder if his sentence was on supervised probation. Since he is on supervision for these offenses, your Affiant believes he is aware of his status as a prohibited person under 18 U.S.C. § 922(g)(1). Your Affiant is aware that some of Kenny Gouge's

convictions occurred in 2016, well before his recent possession of firearms; however, some of the convictions occurred more recently – April of 2021. Your Affiant believes that the number of convictions, their recency, and his periods of incarceration, indicate that Kenny Gouge is aware of his status as a felon. Given the eye-witness statements that drugs and drug paraphernalia were recently seen inside the residence at the Search Location, your Affiant also believes that Kenny Gouge may be an unlawful user of a controlled substance, having lost the power of self-control as to its use.

22. Based on your Affiant's training, education, and experience, your Affiant knows that most people do no destroy or otherwise dispose of firearms that they possess. Firearms are not perishable or consumable items. Your Affiant knows that people who possess firearms also possess ammunition. While the bullet may be discharged from a firearm, ammunition includes the casing, bullet, primer, or powder. Firearms and unspent ammunition may last for many decades and, therefore, also often remain at a location for an extended period of time.

23. Based on his training and experience, your Affiant knows that people who possess firearms and ammunition, also possess documents and records relating to the purchase and receipt of firearms, ammunition, firearm accessories, and parts of firearms. Your Affiant is aware that such records of purchase or acquisition may in hard copy format, or in digital format, and therefore may be contained on cellular telephones hard drives, laptops, or computers, whether in applications on the telephone, in digital photographs or videos, or in emails or texts.

24. Your Affiant believes that at the Search Location described in this Affidavit, and Attachment A, incorporated herein by reference, there will be evidence of violations of 18 U.S.C. § 922(g)(1), Possession of a Firearm by a Prohibited Person (Felon), as well as § 922(g)(3), Possession of a Firearm by a Prohibited Person (Unlawful User of a Controlled Substance). Your Affiant respectfully requests that this Court issue a warrant authorizing the search of

the Search Location, including the residence, any outbuildings, vehicles, or storage containers on the curtilage for any firearms, ammunition, or illegal narcotics. Your Affiant has only disclosed that information necessary to establish probable cause and inform this Court of the pertinent information related to the request for a search authorization.

_____
Jonathan T. Rogers, Task Force Officer
Bureau of Alcohol, Tobacco, Firearms and Explosives

Subscribed and Sworn to before me on this 14th day of July, 2021.

_____
Cynthia Richardson Wyrick
United States Magistrate Judge

# ATTACHMENT B

The person or property to be searched, described above, is believed to conceal:

a) Firearms, including, without limitation, frames, receivers, rifles and handguns;
b) Ammunition, including, without limitation, cartridges, cartridge cases, primers, bullets, and propellant powder designed for use in a firearm;
c) Illegal narcotics;
d) Records, including, without limitation, books and documents, whether in hard copy, magnetic media such as a tape, cassette, disk, memory storage device, or other digital format, used for the purpose of producing, packaging, dispensing, delivering or obtaining controlled substances, or recording transactions involving controlled substances;
e) Records, including, without limitation, books and documents, whether in hard copy, magnetic media such as a tape, cassette, disk, memory storage device, or other digital format, used or created in relation to the receipt, sale, or disposition of any firearm or ammunition;
f) Receipts, schedules, currency, bank checks, cashier's checks, money orders, notes, ledgers, and other papers relating to the receipt, sale, or disposition of any controlled substance, firearm, or ammunition;
g) Receipts, schedules, bank checks, cashier's checks, money orders, notes, ledgers, and other papers relating to the receipt, sale, or disposition of any firearm, or ammunition;
h) Any indication of ownership, dominion, or control over the premises to be searched including, without limitation, rental receipts, mortgage payments, and utility bills;
i) Photographs, videotapes, audio tapes, or electronically stored images of persons involved in the criminal conduct, or of persons spending proceeds of criminal activity;
j) Records of the aforementioned criminal activity whether stored on paper, on magnetic media such as tape, cassette, disk, or on memory storage devices. This shall also include but not be limited to records stored on programmable instruments and electronic storage media such as telephones, voice mail, answering machines, electronic address books, calculators, or any item or device designed to store information;
k) Equipment, devices, records, computers and computer storage discs, to include the seizure of computers, equipment, or devices necessary to retrieve, view, display, or listen to such records;
l) Any indicia of use, ownership, possession, or control of such records mentioned above;
m) Electronic audio and/or video recording devices, including video cameras, media storage devices, and cellular/mobile phones;
n) Keys to safe deposit boxes and lists of inventory of deposit boxes, which evidence the producing, packaging, dispensing, delivering or obtaining controlled substances, or recording transactions involving controlled substances, or the receipt, sale, or disposition of a firearm or ammunition; and,
o) Closed circuit television cameras and monitors which are or maybe used to protect and secure the property and related storage media.

Should any third party be present and claim an interest in any electronic device believed to contain evidence as described above, said device shall be seized but not searched without obtaining a separate warrant or consent of